IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

WARREN E. CONNER, )
      Plaintiff, )
       ) Civil Action No. 7:05CV00267
v. )
       ) **MEMORANDUM OPINION**
JO ANNE B. BARNHART, )
Commissioner of Social Security ) By: Hon. Glen E. Conrad
       ) United States District Judge
      Defendant. )

Plaintiff filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claim for a period of disability, disability insurance benefits and supplemental security income benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423, and 42 U.S.C. §1383 et seq., respectively. Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. §1383(c)(3).

The court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that plaintiff failed to meet the conditions for entitlement established by and pursuant to the Act. If substantial evidence exists for the Commissioner's findings, and those findings were reached through application of the correct legal standard, the conclusion must be affirmed. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971). It is more than a mere scintilla of evidence, but may be less than a preponderance. Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966).

1

The plaintiff, Warren E. Conner, was born on June 23, 1963. He has a high school education. His employment history is primarily in the fields of carpentry and heavy equipment operation, and he worked as a carpenter for 23 years. On November 27, 2002, Mr. Conner had surgery on his right shoulder to repair a rotator cuff tear. He had similar surgery on his left shoulder in 1997. Mr. Conner filed his initial application for disability insurance benefits on November 26, 2002, claiming an onset date of October 6, 2002. He filed a claim for supplemental security income on November 26, 2002 as well. For purposes of the claim for disability insurance benefits, the record reveals that plaintiff met the insured status requirements of the Act at all relevant times covered by the final decision of the Commissioner. See 42 U.S.C. §§ 414 and 423.

Mr. Conner's claims were denied upon initial consideration and reconsideration. He requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held and the ALJ issued an opinion on September 17, 2004, denying Mr. Conner's claim for a period of disability, disability insurance benefits, and supplemental security income. The ALJ found that plaintiff was not under a "disability" as defined in the Act, although the impairment to his shoulder was "severe" within the meaning of the regulations at 20 C.F.R. §§ 404.1521 and 416.921. Furthermore, the ALJ determined that the plaintiff was able to work at a light exertional level based on his residual functional capacity. Applying the five step sequential disability analysis established under 20 C.F.R. § 404.1520, the ALJ concluded his consideration of Mr. Conner's case after determining that the plaintiff was capable of performing a significant range of light work roles that exist in significant number in the national economy.

The initial consideration for determining a claimant's disability is whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Mr.

2

Conner last worked in October 2002, and there is no indication on record that he has engaged in substantial gainful activity since that time. The second and third inquiries under §§ 404.1520 and 416.920 are into the severity of the claimant's impairments. The ALJ found that the post-surgical repair of the right rotator cuff that Mr. Conner experiences is severe, but that his impairment does not meet or medically equal a listed impairment. (TR 20). The fourth factor for consideration is whether the impairment prevents the claimant from performing his past relevant work. The ALJ concluded that Mr. Conner was unable to return to his previous line of work in carpentry as a result of his physical limitations, which constrained him to performing only work requiring light exertion. (TR 22). The fifth consideration is whether other work roles that the claimant could perform exist in significant number in the national economy. The ALJ found that, in light of Mr. Conner's age, education, and past relevant work experience, Mr. Conner retained sufficient residual functional capacity to be able to perform light work such as taking tickets, attending to parking lots, and serving as a gate attendant. (TR 24). Thus, the ALJ denied Mr. Conner's claims for benefits under both programs. See 20 C.F.R. § 404.1520(f) and 416.920(f).

Subsequent to the ALJ's decision, Mr. Conner filed a request for review with the Social Security Administration's Appeals Council. On March 18, 2005, the Appeals Council denied plaintiff's request and adopted the ALJ's opinion as the final decision of the Commissioner. Having exhausted all administrative remedies, plaintiff now appeals to this court.

Although a plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether the plaintiff is disabled for all forms of substantial gainful employment. See 42 U.S.C. §§ 423(d)(2) and 1382c(a). There are four elements of proof which must be considered in making such an analysis. These elements are: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence

of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills and age. Vitek v. Finch, 438 F.2d 1157, 1159-60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

The record in Mr. Conner's case indicates that the Commissioner's final decision is supported by substantial evidence. The ALJ's opinion reflects a thorough review of the opinions of the physicians who examined Mr. Conner, as well as the vocational expert's testimony. The ALJ carefully considered the plaintiff's statements regarding his alleged symptoms and he determined the extent to which these symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence. Therefore, there is substantial evidence to support the Commissioner's finding that the plaintiff is not disabled.

Prior to his difficulties with his right rotator cuff, which is the principal source of Mr. Conner's current complaints, Mr. Conner had difficulties with his left rotator cuff. In an examination on April 17, 1997, Dr. Bruce Thomas determined that Mr. Conner's rotator cuff was torn. (TR 226). Mr. Conner had the cuff repaired and an acromioplasty was performed by Dr. Alfred A. Durham on May 2, 1997. (TR 180). Mr. Conner appears to have made a complete recovery from this procedure, as he returned to his carpentry position in January 1998. (TR 101).

The record shows that Mr. Conner had surgery to repair a tear in his right rotator cuff on November 27, 2002. (TR 149). The tear resulted from a fall off of a ladder. (TR 160). In his pre-operative assessment of Mr. Conner, Dr. Durham noted that, in addition to his shoulder complaints, the plaintiff reported soreness in his hips and a family history of rheumatoid arthritis. Based on these statements, Dr. Durham ordered baseline arthritic studies to determine whether Mr. Conner suffered from systemic arthritis. (TR 155). The surgery was largely successful and

4

Dr. Durham reported on February 10, 2003 that Mr. Conner was "making progress with his shoulder and his range of motion improved." (TR 138).

In a report dated April 14, 2003, Dr. Durham noted that Mr. Conner has "the best range of motion and function since the time of his surgery," stating further that Mr. Conner had about 160 degrees of flexion and 160 degrees of abduction. (TR 139). Dr. Durham wrote that Mr. Conner needed to seek a job that was less physically demanding and noted arthritis in his hands and apparent manifestations in his feet, but did not indicate that Mr. Conner would be unable to work. On the contrary, Dr. Durham stated that there was "some confusion as to whether he was to return to work on 02/11/03," which suggests that Mr. Conner himself had contemplated returning to his previous employment. (TR 139). Dr. Durham further suggested that Mr. Conner should learn some computer skills or find a job that does not require a lot of heavy lifting.

On December 9, 2002, Mr. Conner saw Dr. Tiffany A. Taylor for treatment for his allergies and difficulty sleeping. (TR 164). Dr. Taylor prescribed Zyrtec for his allergic rhinitis and noted that Mr. Conner's difficulty sleeping was "secondary to surgery." (TR 164).

Mr. Conner saw Dr. Paul F. Page on April 18, 2003, regarding his complaints of discomfort in his legs, hips, and back. (TR 174). Dr. Page noted mild tenderness in his left great toe joint, but found nothing to suggest any arthropathy. Dr. Page prescribed Xanax to help Mr. Conner sleep. (TR 174). Mr. Conner's chart from his visits to Franklin Memorial Hospital indicate that at his February 26, 2003 exam he had flexion of 130 degrees and abduction of 100 degrees and on March 10, 2003, he reported that his shoulder didn't pop as much and was "getting stronger," and his flexion was 140 degrees and abduction of 130 degrees. (TR 189-90). These measurements, in conjunction with Dr. Durham's April 2003 findings of 160 degrees of both flexion and abduction, reveal an overall pattern of improvement in Mr. Conner's shoulder.

5

At his September 8, 2003 hearing before the ALJ, Mr. Conner testified that he could carry 20 to 30 pounds with both hands, and that he did so occasionally when he lifted a bag of dog food at his home. (TR 268). Mr. Conner indicated that soreness in his hip joints often prevented him from doing anything and that he needed to lay down to rest approximately once a day to recover from the joint pain. (TR 265-69). With respect to his shoulder, Mr. Conner stated only that it was better after the surgery, but when he lifted things that he shouldn't he could "feel it pulling." (TR 271).

The improvement noted in the Franklin Memorial charts was consistent with his apparent progress over time, as indicated by Dr. Hetzal Hartley's report on October 17, 2003. This report was produced following a consultative exam ordered by the ALJ. (TR 275). Dr. Hartley's report indicated that Mr. Conner refused to elevate his arm above 90 degrees laterally and 110 degrees anteriorly, but questioned "whether or not the right shoulder range of motion limitations are genuine of if they are exaggerating for the benefit of the exam.[sic]" (TR 203-04).

Dr. Hartley further noted that it was "interesting for the patient's complaints of shoulder problems [that his] supraspinatus strength testing is bilaterally excellent," his grip strength was 75 pounds on the left and 80 pounds on the right, and he had "full active back range of motion with excellent rotation, lateral flexion and forward flexion." (TR 203-04). Thus, Dr. Hartley concluded that "[t]he patient appears to have recovered well from his rotator cuff surgery," and that Mr. Conner's "demonstrated strength in the right shoulder, arm and hand indicate that he is most likely using his extremity in a near normal fashion." (TR 204). The report suggested that Mr. Conner's physical limitations would prevent him only from lifting weight of 20 pounds or more or lifting above his head with his right arm. (TR 205). The ALJ accorded Dr. Hartley's

opinion as to Mr. Conner's functional limitations great weight because it was consistent with the overall record and based on an actual examination of the claimant. (TR 23).

On December 16, 2003, Mr. Conner saw Dr. Taylor once more and she completed an insurance statement regarding his arthritis. Dr. Taylor stated that Mr. Conner was unable to return to his occupation, and that he was unable to do prolonged gripping or overhead work. (TR 212). She also stated that he had made "no improvement" as to his rotator cuff injury. (TR 213). The ALJ gave Dr. Taylor's assessment little weight in his determination because her opinion of Mr. Conner's disability was conclusory and her treatment of him was primarily for allergies and sleep problems. (TR 22). See 20 C.F.R. § 404.1527(e)(2).

At oral argument before this court, the plaintiff asserted that the ALJ failed to explore all of his relevant afflictions by not giving sufficient consideration to the evidence of his mental and emotional problems. However, the record reflects only scant evidence that Mr. Conner suffered from any emotional impairments other than his own conclusory statements that he was sometimes depressed and that the source of his unhappiness was his outstanding bills. (TR 114). Indeed, the medical records from Lewis-Gale Clinic dated October 7, 2002 note "[n]o evidence of depression, anxiety or other mood disorder." (TR 163). After hearing Mr. Conner's testimony regarding his physical ailments, the ALJ specifically asked whether he had any other problems and Mr. Conner indicated only that his back was giving him difficulty. (TR 293-94). His examining physicians never thought that it would be appropriate to refer Mr. Conner to a specialist for psychiatric consultation, and there is no indication that Mr. Conner sought professional help for his emotional troubles. Therefore, due to the lack of evidence to warrant a psychiatric evaluation, the ALJ's failure to order such a consultation is not error. See Baker v. Chater, 957 F. Supp. 75, 79-80 (D. Md. 1996).

Based on this record, the court concludes that the Commissioner's final decision is supported by substantial evidence. The ALJ's opinion, which was adopted by the Commissioner, demonstrates a thorough review of plaintiff's statements, testimony, and relevant work history, as well as the evaluations of his treating physicians. The conclusion that plaintiff has residual functional capacity for several specific light work roles is supported by substantial evidence, including plaintiff's own statements and his medical records. Consequently, the record supports the Commissioner's determination that plaintiff is not disabled.

As a result of finding substantial evidence to support the Commissioner's determination of nondisability, the court concludes that the Commissioner's final decision must be affirmed. In affirming the Commissioner's decision, the court does not imply that the plaintiff is completely free from symptoms that would constrain his capacity to work. However, there is substantial evidence to support the ALJ's opinion that plaintiff has the residual functional capacity to perform jobs that exist in the national economy in significant number, including parking lot attendant, gate attendant, and ticket taker. This residual functional capacity disqualifies Mr. Conner from receiving a period of disability, disability insurance benefits, and supplemental security income. It must be recognized that the inability to work without any subjective complaints does not of itself render a claimant totally disabled. Craig v. Chater, 76 F.3d 585 (4th Cir. 1996). It appears that the ALJ gave full consideration to all the relevant factors in adjudicating plaintiff's claim for benefits. It follows that all facets of the Commissioner's final decision are supported by substantial evidence.

As a general rule, resolution of conflicts in the evidence is a matter within the province of the Commissioner, even if the court might resolve the conflicts differently. Richardson v. Perales, supra; Oppenheim v. Finch, 495 F.2d 396 (4th Cir. 1974). For the reasons stated, the

court finds the Commissioner's resolution of the pertinent conflicts in the record in this case to be supported by substantial evidence. Accordingly, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, supra.

The Clerk is directed to send certified copies of this opinion to all counsel of record.

ENTER: This 20th day of October, 2005.

*[signature]*

United States District Judge